IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-150-FL

| | | |
|---|---|---|
| TOM PRICE and WILLIAM LEGG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| CITY OF FAYETTEVILLE, NORTH | ) | |
| CAROLINA; KATHERINE BRYANT, in | ) | |
| her official capacity as Chief of Police for | ) | |
| the Fayetteville Police Department; and | ) | |
| WILLIAM RANDOLPH SESSOMS, | ) | |
| individually and in his official capacity as | ) | |
| Police Officer for Fayetteville Police | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion for judgment on the pleadings,

pursuant to Federal Rule of Civil Procedure 12(c), and motion to dismiss plaintiff's claims for

permanent injunctive and declaratory relief as moot, pursuant to Federal Rule of Civil Procedure

12(b)(1). (DE 50, 51). Plaintiffs responded in opposition, and defendants replied. In this posture,

the issues raised are ripe for ruling. For the reasons that follow, the court denies defendants'

motions.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on March 1, 2013, under 42 U.S.C. §§ 1983 and 1988,

seeking injunctive relief, declaratory relief, and nominal damages against defendants for asserted

deprivation of plaintiffs' fundamental right to free speech under the First Amendment and right to due process of law, in connection with plaintiffs' interest in distributing religious literature at the 2012 Fayetteville Dogwood Festival ("Dogwood Festival"), and future annual Dogwood Festivals. In particular, plaintiffs seek the following relief, as pertinent to the present order:

> (1) Nominal damages arising from acts of defendants during the 2012 Dogwood Festival.

> (2) A declaratory judgment declaring that acts of defendants during the 2012 Dogwood Festival violated plaintiffs' constitutional rights.

> (3) A declaratory judgment declaring that a ban imposed on literature distribution during the annual Dogwood Festival is unconstitutional on its face and as applied to plaintiffs' expression.

> (4) A permanent injunction enjoining defendants from applying a ban on literature distribution so as to restrict constitutionally-protected speech of speakers, including plaintiffs, as well as unnamed third parties, on the public ways in Fayetteville, North Carolina, during the annual Dogwood Festival.

> (5) Award plaintiffs their costs and expenses of this action, including reasonable attorneys' fees.

In conjunction with their original complaint, on March 1, 2013, plaintiffs filed a motion for preliminary injunction in which they sought to enjoin defendants "from applying policy that facilitates a ban on literature distribution, on its face and as-applied, so as to prevent [plaintiffs] and third party individuals from engaging in literature distribution on public ways in downtown Fayetteville during the 2013 Fayetteville Dogwood Festival, future Dogwood Festivals, and other festivals taking place in downtown Fayetteville." (Mot. for Prelim. Inj. 1). Following hearing and upon consideration of briefs and exhibits submitted by the parties, the court entered an order on April 23, 2013, denying the preliminary injunction motion, which order contained findings of facts on the record then before the court and conclusions of law.

2

Plaintiffs appealed the court's denial of their preliminary injunction motion, and upon plaintiffs' motion the court stayed all further case activity pending the appeal. The court of appeals dismissed the appeal on December 11, 2013, and the mandate issued on January 2, 2014. Plaintiffs filed a second motion for preliminary injunction that same date, including new factual assertions and exhibits based upon the 2013 and 2014 Dogwood Festivals. The second motion for preliminary injunction sought to enjoin defendants from "applying and/or enforcing policy that bans literature distribution, on its face and as-applied, so as to prevent Price, Legg and third party individuals from engaging in literature distribution on public ways in downtown Fayetteville during the 2014 Dogwood Festival . . . or any future Dogwood Festival." (Second Mot. for Prelim. Inj. 1).

On January 15, 2014, the court lifted the stay and held a Rule 16 status hearing at which the parties agreed to attend a court-hosted settlement conference during the first two weeks of February 2014. Meanwhile, defendants filed on January 30, 2014, an initial response in opposition to plaintiffs' motion, in which defendants asserted as previewed at hearing that the motion is moot because the city is not, and will not be, enforcing the restriction plaintiffs seek to enjoin.

Following court-hosted settlement conference held on February 11, 2014, the parties tendered a proposed consent order stating that the parties resolved between themselves plaintiffs' second motion for preliminary injunction. In particular, the consent order states that the parties agreed that defendants "will not enforce the current literature distribution rule promulgated by Dogwood Festival, Inc." (DE 47). The court retained jurisdiction to enforce the parties' agreement and to resolve the remaining claims set out in plaintiffs' complaint.

The court directed the parties to meet and cover and develop a joint report and plan for remaining case deadlines and disposition. In the meantime, on March 11, 2014, defendants filed the

3

instant pending motions. On March 20, 2014, plaintiff filed a stipulation allowing plaintiff to file an amended complaint, which is identical in all material respects to the original complaint, except that it adds the identity of the "John Doe" defendant named in the original complaint and it is not verified as the original complaint. On the same date, the parties filed a joint report and plan suggesting a period of discovery to commence May 31, 2014. On the basis of the parties' joint report and plan, the court has entered a case management order that includes a period of discovery running from May 31, 2014, to September 30, 2014, and sets a dispositive motions deadline for October 31, 2014.

Plaintiffs filed their opposition to defendants' motion for judgment on the pleadings and motion to dismiss on April 1, 2014, and defendants replied on April 17, 2014.

## STATEMENT OF FACTS

As pertinent to the motion for judgment on the pleadings, the allegations in the complaint may be summarized as follows. The Dogwood Festival is a festival held annually each April in downtown Fayetteville, North Carolina, in an area spanning various public streets and city parks. The Dogwood Festival is free and open to the public, and events taking place include musical acts and other forms of entertainment, food vendors, and booths for arts, crafts, and other activities. While many public streets are closed for vehicular traffic, there are no barriers hindering pedestrian access to the festival or any of the businesses and amenities found in the area, including restaurants, public library, parks, and other buildings.

The Dogwood Festival is organized and operated by a private, non-profit corporation, the Dogwood Festival, Inc., which obtains a special event permit each year from Fayetteville to host the event. In accordance with city regulations, Fayetteville issues permits each year to the Dogwood

4

Festival, Inc., subject to the condition that the Dogwood Festival not unduly interfere with normal business activity or the orderly movement of traffic within the area where the Dogwood Festival is taking place.  In addition, prior to issuing a permit, the Fayetteville Police Department, in consultation with the city permitting official, determines the number of police officers needed to appropriately police street closures and to provide security for the event. Dogwood Festival, as permittee, is required to follow instructions of a police event commander. In this manner, Fayetteville maintains control over traffic flow and security in the public streets and parks during the Dogwood Festival.

Plaintiffs are evangelical Christians who seek to communicate a religious message by handing out literature and engaging individuals in conversation about the Christian faith.  On Saturday, April 28, 2012, during the Dogwood Festival, plaintiffs went to a traffic circle at the intersection of Ray Avenue and Maiden Lane in Fayetteville, North Carolina, to hand out gospel tracts to individuals who were attending the Dogwood Festival or otherwise walking around in the area. During the Dogwood Festival, the traffic circle is closed to vehicular traffic, but open to pedestrian traffic.  The traffic circle is located in the center of the festival and it affords plaintiffs the greatest opportunity to reach as many people as possible with their message during the Dogwood Festival.

While they were at the traffic circle on April 28, 2012, plaintiffs handed out tracts and engaged with consensual conversations with pedestrians for about 30 to 45 minutes.  During this time, they did not impede any pedestrian traffic, they did not have any sound amplification devices, they did not block anyone's way, they did not create any traffic back-up, and they did not cause any problems or disturbances.  In addition, they did not interfere with the operations of the festival, and

they were not aware of anyone complaining otherwise. Plaintiffs planned to continue to stay in the traffic circle handing out gospel tracts and engaging in conversations.

Nevertheless, a representative of Dogwood Festivals, Inc., approached plaintiff William Legg and asked him to discontinue his literature distribution or leave. Plaintiff Legg declined unless he saw something in writing demonstrating a basis for the forced stoppage. The festival representative left. He came back approximately fifteen minutes later with a woman who was in charge of the Dogwood Festival, and defendant William Randolph Sessoms, a police officer with the Fayetteville Police Department. Upon seeing the officer, plaintiff Tom Price joined the conversation. Plaintiffs could see that defendant Sessoms was a police officer because he was dressed in police attire.

Defendant Sessoms ordered plaintiffs to stop distributing literature under the threat of arrest. Plaintiffs asked for a written basis for this directive. Defendant Sessoms informed them that he was a police officer empowered by the State of North Carolina to arrest those violating the law. Plaintiffs clarified that they were seeking written authority for forcing them to stop their expression, but the officer did not respond to their request. Instead, defendant Sessoms explained that the police were enforcing the policy of Dogwood Festival, Inc., that bans literature distribution within festival confines. Defendant Sessoms reiterated that he would arrest Price and Legg if they did not obey his directive and stop their literature distribution at once.

Plaintiffs did not want to be arrested, so they discontinued their expressive activity and left the area. If not for the ban imposed on their literature distribution, and the order from defendant Sessoms, plaintiffs would have carried on with their expressive activities in the traffic circle during

the 2012 Dogwood Festival, and they would have planned on conducting similar activities during the 2013 Dogwood Festival.

In an effort to secure relief short of litigation, plaintiff Legg, through counsel, sent a letter to various city officials, including the Mayor, seeking a relief from the ban that kept plaintiffs from distributing literature in the traffic circle during the Dogwood Festival. The city responded by letter dated June 14, 2012. In its response, the city stated that "[t]he City is not involved in the Dogwood Festival, Inc.'s decision to prohibit the distribution of literature at the Festival." The city also noted that Dogwood Festival, Inc., offers an alternative "dedicated area" for literature distribution, as well as an alternative option to obtain an information booth.

Despite the city's statement to the contrary in its letter, nobody previously had informed plaintiffs of the alternative dedicated area for literature distribution. In addition, the dedicated area proposed is in an isolated area that is a poor substitute for the traffic circle, which would cause plaintiffs to miss much of their intended audience. The booth alternative is not a viable alternative for them, as they are not qualified individually for one, it is unlikely they could obtain one if qualified, it is cost-prohibitive, and a booth would be grossly inferior for their expressive purposes.

Additional facts and circumstances pertinent to defendants' motion to dismiss claims, which include defendants' statements and other information provided by defendants during the course of litigation, will be discussed further in the analysis herein.

**DISCUSSION**

A. Standard of Review

    1. Motion for Judgment on Pleadings

In reviewing a motion for judgment on the pleadings, under Rule 12(c), the court applies "the same standard" as for motions to dismiss made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). Thus, to survive a motion for judgment on the pleadings, the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether judgment on the pleadings should be granted, "a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). Nor must the court accept "unwarranted inferences, unreasonable conclusions, or arguments." Id. (quotations omitted).

    2. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A motion under Federal Rule of Civil Procedure Rule 12(b)(1) challenges the court's subject matter jurisdiction. The plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. See McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either assert the complaint fails to state facts upon which subject matter jurisdiction may be based or attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. The latter type of attack, which defendants' assert here, is used when a court's limited jurisdiction

8

precludes hearing the case brought. Id. Since the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Id. Nevertheless, "where the jurisdictional facts are intertwined with the facts central to the merits of the dispute . . . the entire factual dispute is appropriately resolved only by a proceeding on the merits." Id.

B. Analysis

    1. Motion for Judgment on Pleadings

        a. Individual capacity claims against defendant Sessoms

Plaintiffs assert claims under 42 U.S.C. § 1983 against defendant Sessoms, in his individual capacity, based on an alleged violation of their freedom of speech and due process rights under the U.S. Constitution. In their motion for judgment on the pleadings, defendants argue that the doctrine of qualified immunity bars the individual capacity claims against defendant Sessoms.

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, to survive a defendant's assertion of qualified immunity, "a plaintiff must satisfy the following two-prong test: '(1) the allegations underlying the claim, if true, substantiate [a] violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'" Smith v. Gilchrist, ___ F.3d ___, 2014 WL 1910833 *3 (4th Cir. 2014) (quoting Ridpath v. Board of Governors Marshall Univ., 447 F.3d 292, 306 (4th Cir. 2006)). The outcome of the "clearly established" test "depends largely upon the level of generality at which the relevant legal rule is to be identified." Id. (quoting Wilson v. Layne, 526

9

U.S. 603, 614 (1999)). Under the qualified immunity analysis, "the nature of the right allegedly violated must be defined at a high level of particularity." Occupy Columbia v. Haley, 738 F.3d 107, 121 (4th Cir. 2013).

In this case, the allegations of the complaint, viewed in the light most favorable to plaintiffs, substantiate a violation of plaintiffs' First Amendment right to free speech. "[T]here is no doubt that as a general matter peaceful picketing and leafleting are expressive activities involving 'speech' protecting by the First Amendment." Id. (quotations omitted). "It is also true that 'public places' historically associated with the free exercise of expressive activities, such as streets, sidewalks, and parks, are considered, without more, to be 'public forums.'" Id. (quotations omitted). As alleged in the complaint, the traffic circle is a public forum because it is comprised of public streets and sidewalks open to the public during the Dogwood Festival.

Because plaintiffs sought "to engage in protected speech in a traditional public forum, the government's power to regulate that speech is limited, though not foreclosed." Clatterbuck v. City of Charlottesville, 708 F.3d 549, 555 (4th Cir. 2013). "The government may impose reasonable content-neutral time, place, and manner restrictions that are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication." Id. The court will consider these requirements in turn below.

A "restriction of speech is content-neutral if it is justified without reference to the content of the regulated speech," whereas "a restriction is content-based if it was adopted because of disagreement with the message the speech conveys." Id. (internal quotations omitted). "In this inquiry, the government's purpose is the controlling consideration." Id. (internal quotations omitted). Plaintiffs have not asserted in the complaint that the restriction enforced by defendant Sessoms was

based on the content of their expression, and they do not advance this argument in their brief. Moreover, there are no facts alleged suggesting that defendant Sessoms enforced the restriction on the basis of the content of plaintiffs' expression. Accordingly, for purposes of the present analysis, the restriction at issue in this case is content-neutral.

"A valid time, place, and manner regulation must . . . serve a significant governmental interest." Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 649 (1981). Here, the complaint does not allege any governmental interest served by the restriction enforced by defendant Sessoms. The complaint alleges simply that plaintiffs were handing out "gospel tracts" in the traffic circle, when a representative of Dogwood Festivals, Inc., and defendant Sessoms ordered plaintiffs to stop distributing literature or leave. (Am. Compl. ¶¶ 49, 51, 54). When asked for a basis for this directive, defendant Sessoms "explained that the police were enforcing the policy of Dogwood Festival, Inc. that bans literature distribution within festival confines." (Id. ¶56).

As in Clatterbuck, the court is constrained upon considering a motion for judgment on the pleadings to limit its analysis of governmental interest to the allegations of the complaint. In particular, the court is "bound . . . to evaluate [plaintiffs'] claims based on the sufficiency of their pleadings, not based on the government's asserted evidence or our [the court's] independent judgment of likely purposes." 708 F.3d at 556. Accordingly, the court observed in Clatterbuck, "without evidence about the City's purpose we are . . . unable to weigh how compelling the City's interest is, nor whether the Ordinance is narrowly tailored to that interest." Id. at 559. Similarly, here, without any allegation or suggestion in the complaint about the purpose behind the enforcement of the literature distribution restriction, the restriction does not meet on the present showing the requirement of serving a "significant governmental interest." Heffron, 452 U.S. at 649.

11

"Where a restriction on speech lacks [a] close and substantial relation to the governmental interests asserted, it cannot be, by definition, a reasonable time, place, or manner restriction." Edenfield v. Fane, 507 U.S. 761, 773 (1993).

As noted previously, a reasonable content-neutral time, place, and manner restriction must "leave open ample alternative channels of communication." Clatterbuck, 708 F.3d at 555. Just as the complaint does not allege or suggest a purpose of the literature distribution restriction, it also does not allege that plaintiffs were offered any ample alternative channels of communication. Rather, during the 2012 Dogwood Festival plaintiffs were given the option to cease their expressive activity or leave, and they were told that "the police were enforcing the policy of Dogwood Festival, Inc. that bans literature distribution within festival confines." (Am. Compl. ¶56).

Although plaintiffs were informed in June 2012 of an option to distribute literature in Linear Park, according to the complaint plaintiffs were not informed of this option at the time the restriction was enforced during the 2012 Dogwood Festival. (Id. ¶ 64). Plaintiffs also were reminded in June 2012 of an option to distribute literature from an information booth. Plaintiffs allege, however, that this was not a viable alternative for them because of multiple reasons, including that they are not qualified individually for one, it is unlikely they could obtain one if qualified, it is cost-prohibitive, and a booth would be grossly inferior for their expressive purposes. (Id. ¶¶ 65-66). Considering these allegations in the light most favorable to plaintiffs, the alleged literature distribution restriction did not leave open ample alternative means of communication.

In sum, based on the allegations in the complaint, the literature distribution restriction enforced by defendant Sessoms is not a reasonable time, place, and manner restriction because it does not serve a significant government interest and leave open ample alternative channels of

12

communication. Therefore, plaintiffs have alleged that defendant Sessoms' enforcement of the restriction at the 2012 Dogwood Festival violated their First Amendment rights.[1]

Having determined that plaintiffs have alleged a violation of their First Amendment rights, the court considers next whether "this violation was of a clearly established right of which a reasonable person would have known." Smith, ___ F.3d ___, 2014 WL 1910833. "When deciding whether a right is clearly established, we ask whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." Occupy Columbia, 738 F.3d at 124 (4th Cir. 2013). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

The question the court must therefore ask is whether, on April 28, 2012, it was clearly established in the Fourth Circuit and Supreme Court precedent that, in the absence of a valid time, place, and manner restriction, ordering plaintiffs to stop their literature distribution or leave, as alleged in the complaint, was a violation of their First Amendment rights. In light of the First Amendment case law described above, the court must answer this question in the affirmative.

Defendants argue that "[t]he only 'right' at issue is whether Plaintiffs had a 'clearly established right' to distribute literature at the 2012 Dogwood Festival notwithstanding the time, place, and manner restriction promulgated by the Dogwood Festival." (Reply at 9). Defendants point out that the court determined in its preliminary injunction order that "the U.S. Supreme Court's

---

[1] Where plaintiffs have alleged a First Amendment violation the court need not analyze separately at this juncture whether plaintiffs similarly have pled a violation of their due process rights, as the complaint asserts. In addition, the court notes that the parties do not provide separate argument at this time regarding the alleged violation of due process rights.

decision in <u>Heffron</u> dictates that on the facts present at the 2012 Dogwood Festival, Plaintiffs did not have such a right at all, much less a 'clearly established right.'" (<u>Id.</u>) In so arguing, however, defendant assumes facts that are not in the complaint, and does not construe them in the light most favorable to plaintiff as the court is required to do on a motion for judgment on the pleadings. As set forth above, considering the allegations of the complaint, the literature distribution restriction enforced on April 28, 2012, did not serve a significant government interest, and it did not provide ample alternative means for communication. It is not pertinent to the present inquiry that the court found to the contrary based upon a limited record on disputed facts presented on motion for preliminary injunction. While defendants suggest that the court should consider again the matters previously considered outside of the pleadings, and convert their motion for judgment on the pleadings into a motion for summary judgment, the court declines to do so at this stage of the litigation. Such a step is premature, given that the parties have recently endorsed, and the court has adopted, a scheduling order that allows for limited discovery which may illuminate the very contested issues that defendants raise in the motion for judgment on the pleadings.

In sum, based on the foregoing, the court will deny defendants' motion for judgment on the pleadings as to plaintiffs' claim for nominal damages against defendant Sessoms in his individual capacity.

### b. Official capacity claims

Claims against city officials in their official capacity are in all respects, for purposes of Section 1983, "treated as suits against the municipality." <u>Santos v. Frederick Cnty. Bd. of Comm'rs</u>, 725 F.3d 451, 469-70 (4th Cir. 2013). "[A] municipality is subject to Section 1983 liability only when its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may

fairly be said to represent official policy, inflicts the [plaintiff's] injury.'" Id. (quoting Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 694 (1978)).

"An official policy often refers to 'formal rules or understandings that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.'" Semple v. City of Moundsville, 195 F.3d 708, 712-13 (4th Cir. 1999) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 480 (1986)).  "While municipal policy is most easily found in municipal ordinances, 'it may also be found in formal or informal ad hoc 'policy' choices or decisions of municipal officials authorized to make and implement municipal policy.'" Edwards v. City of Goldsboro, 178 F.3d 231, 244-45 (4th Cir. 1999) (quoting Spell v. McDaniel, 824 F.2d 1380, 1385 (4th Cir.1987)).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).  By contrast, "where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."  Id. at 824.

The complaint sufficiently alleges facts permitting an inference that the violation of plaintiffs' First Amendment rights on April 28, 2012, was caused by an existing unconstitutional municipal policy.  In particular, the complaint alleges that defendant Sessoms ordered plaintiffs to stop distributing literature under the threat of arrest.  When asked for a written basis for this directive, defendant Sessoms "explained that *the police were enforcing the policy of Dogwood*

15

*Festival, Inc.* that bans literature distribution within festival confines." (Am. Compl. ¶ 56 (emphasis added)). In this manner, as alleged, defendant Sessoms not only individually directed plaintiffs to stop distributing literature, but also he suggested that "the police" had made a decision in the form of a "fixed plan[] of action to be followed under similar circumstances consistently and over time" Pembaur, 475 U.S. at 480, to enforce the policy of Dogwood Festival, Inc. Although the city in its June 2012 letter asserted that it "is not involved in the Dogwood Festival Inc.'s decision to prohibit the distribution of literature at the Festival," this letter says nothing of the city's involvement in *enforcing* the prohibition during the 2012 Dogwood Festival or other festivals around that time in the city.

In addition, plaintiffs have alleged that the city caused the violation of plaintiffs' First Amendment rights by giving the Dogwood Festival Inc. discretion, through application of the city permitting regulations, to exclude constitutionally-protected expression. The Fourth Circuit has recognized that even where city policies do not "directly command[] or authorize constitutional violations," they may nonetheless cause the violation by providing "tacit authorization" to unconstitutional conduct. Spell, 824 F.2d at 1387-88. Plaintiffs have not cited any case, however, in which a court has found municipal liability merely upon the issuance of a special-use permit to a private organization. Rather, cases cited by plaintiffs involved circumstances where a city has issued a permit *and then enforced* the private entity's policy, as alleged in this case. See Parks v. City of Columbus, 395 F.3d 643, 652 (6th Cir. 2005); Bays v. City of Fairborn, 668 F.3d 814, 818 (6th Cir. 2012).[2] Because plaintiffs have sufficiently alleged that the city had a policy of enforcing

_____

[2] United Auto Workers v. Gaston Festivals, 43 F.3d 902 (4th Cir. 1995), cited by defendants, is inapposite. There, the court upheld dismissal of a § 1983 suit where plaintiffs alleged a private organization that organized an annual festival violated their First Amendment

16

the Dogwood Festival Inc.'s allegedly unconstitutional restriction, the court need not address at this juncture whether the issuance of a special use permit, alone, could serve to establish municipal liability.

Defendants argue that the single interaction with defendant Sessoms is insufficient to overcome "stringent" requirements for plaintiffs seeking to establish a municipal policy. This argument raised at this stage of the proceedings is flawed in two respects. As an initial matter, the "stringent" requirements to which defendants refer are "substantive requirements for proof of municipal liability." Jordan v. Jackson, 15 F.3d 333, 338 (4th Cir. 1994). They do not represent pleading requirements; indeed the Fourth Circuit expressly has recognized that while "the substantive requirements for proof of municipal liability are stringent," "section 1983 claims are not subject to a heightened pleading standard paralleling the rigors of proof demanded on the merits." Id. Under this pleading standard, "[t]here is no requirement that [plaintiffs] . . . plead the multiple incidents of constitutional violations that may be necessary at later stages to establish the existence of an official policy or custom and causation." Id. at 339. Rather, "a § 1983 plaintiff seeking to impose municipal liability must satisfy only the usual requirements of notice pleading specified by the Federal Rules." Edwards, 178 F.3d at 245 (quoting Jordan, 15 F.3d at 339); see Leatherman v.

_____

rights by denying them an information booth at the festival. The court held that the "organization, management, and promotion of events" by the private organization did not fall within the domain of government functions, and thus could not support a § 1983 suit. There was no allegation or discussion of any involvement by city officials in enforcing the denial of the booth, and plaintiff's members "were still free to . . . hand out pamphlets at festival entrances, and to discuss their views with patrons" of the festival. Id. at 905. Thus, United Auto Workers is distinguishable both because there was no police enforcement and because the restriction at issue allowed for literature distribution other than through a booth.

<u>Tarrant Cnty.</u>, 507 U.S. 163, 164 (1993). Thus, plaintiffs were not required to allege multiple instances of violations of their First Amendment rights to state a claim of municipal liability.

In addition, as set forth above, plaintiffs do not merely allege existence of a municipal policy on the basis of a single incident of misconduct. Rather plaintiffs allege that "the police were enforcing" the literature distribution restriction of the Dogwood Festival, Inc. (Am. Compl. ¶56). In this manner, although plaintiffs allege only one incident in which their First Amendment rights were violated, they include an allegation that this single incident was caused by an existing municipal policy to enforce the restriction of the Dogwood Festival Inc. Such allegations support plaintiffs assertion in their complaint of a claim that "[d]efendants' policies and practices, and the enforcement thereof, violate the Free Speech Clause of the First Amendment." (<u>Id.</u> ¶ 78).

In sum, defendants' motion for judgment on the pleadings as to plaintiff's claim against defendants in their official capacity will be denied.

2. Motion to Dismiss

Defendants move to dismiss as moot plaintiffs' claims for permanent injunctive and declaratory relief. The court notes at the outset that, in light of the court's ruling on plaintiffs' claim against defendant Sessoms in his individual capacity based on an alleged violation of their First Amendment rights taking place April 28, 2012, plaintiffs' claim for declaratory relief seeking a declaration of this same violation (<u>see</u> Am. Compl. p. 14, section B.), necessarily is not moot. Defendants' motion to dismiss must therefore first be denied as to that particular claim for declaratory relief. The court turns next to consider whether the remaining claims for injunctive and declaratory relief, (<u>id.</u>, sections C.-E.), are moot.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (internal quotations omitted). "In accordance with this principle, the standard [the Supreme Court has] announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (internal quotations omitted). "The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Id. (internal quotations omitted); see also Ne. Florida Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla., 508 U.S. 656, 662 (1993) (holding that claims for injunctive relief are not mooted by city's repeal of challenged ordinance).

Defendants have not met the heavy burden of demonstrating that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. Defendants' assertion of mootness is belied by the parties' sharp dispute over the nature of the constitutional violation, and whether it was due to the conduct of a single police officer, the policy of a private organization, or the policy of the city itself. For example, defendants assert in their reply brief that "the City's only 'policy' is not to enforce the Dogwood Festival, Inc.'s restriction or any other Dogwood Festival, Inc. rules." (Reply at 3-4). Defendants assert that "a total of four Affidavits state in no uncertain terms that the City's longstanding policy will continue in the future." (Id. at 4). Plaintiffs, however, dispute that the city has always maintained a policy not to enforce the Dogwood Festival, Inc.'s restriction. In particular, the complaint asserts that defendant Sessoms explained to them that "the police were enforcing the policy of Dogwood Festival, Inc. that bans literature distribution within

festival confines." (Am. Compl. ¶ 56).   Indeed, as noted above, in its 2012 letter to plaintiff Legg, the city merely stated that it was not involved in the decision to prohibit the distribution of literature at the festival, but it did not deny its involvement in enforcing the restriction. (Id. ¶¶ 61-62).

Defendants suggest, through their affidavits, a distinction between, on the one hand, a police officer's duty to enforce the law, enforce city ordinances, and maintain the peace, and, on the other hand, a police officer's duty to enforce policies of private entities hosting events on city property. But, plaintiffs' have not conceded that this distinction has any legal significance in the context of this case.   Indeed defendants have not cited any case law in which a court has drawn a distinction, for purposes of First Amendment analysis, between a police officer directly telling a person to cease literature distribution and a police officer telling a person to leave for failure to follow the direction of a private entity to cease literature distribution.   Plaintiffs, by contrast, have relied upon a federal circuit court case in which a city was held responsible for a First Amendment violation where a police officer told a person "that they would be arrested for criminal trespassing if they did not stop" displaying signs or handing out literature as directed moments earlier by a private festival worker. See Bays, 668 F.3d at 818.

Although the court expresses no opinion as to whether plaintiffs ultimately may be entitled to the declaratory and injunctive relief they request when considered upon a more complete record, it suffices to say that the controversy in this matter is not moot.   Accordingly, defendants' motion to dismiss for lack of subject matter jurisdiction will be denied.

CONCLUSION

Based on the foregoing, defendants' motion for judgment on the pleadings and motion to dismiss are DENIED.

SO ORDERED this the 21st day of May, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge