IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-150-FL

| | | |
|---|---|---|
| TOM PRICE and WILLIAM LEGG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| | ) | |
| CITY OF FAYETTEVILLE, NORTH | ) | |
| CAROLINA; KATHERINE BRYANT, in | ) | |
| her official capacity as Chief of Police for | ) | |
| the Fayetteville Police Department; and | ) | |
| WILLIAM RANDOLPH SESSOMS, | ) | |
| individually and in his official capacity as | ) | |
| Police Officer for Fayetteville Police | ) | |
| Department, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on plaintiffs' motion for attorney's fees, pursuant to 42 U.S.C. § 1988. (DE 70). Defendants responded in partial opposition, and plaintiffs replied. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants in part and denies in part plaintiffs' motion.

**STATEMENT OF THE CASE**

Plaintiffs commenced this action on March 1, 2013, under 42 U.S.C. §§ 1983 and 1988, seeking injunctive relief, declaratory relief, and nominal damages against defendants for asserted deprivation of plaintiffs' fundamental right to free speech under the First Amendment and right to due process of law, in connection with plaintiffs' interest in distributing religious literature at the

2012 Fayetteville Dogwood Festival ("Dogwood Festival"), and future annual Dogwood Festivals. In particular, plaintiffs sought the following relief, as pertinent to the present order:

> (1) Nominal damages arising from acts of defendants during the 2012 Dogwood Festival.
>
> (2) A declaratory judgment declaring that acts of defendants during the 2012 Dogwood Festival violated plaintiffs' constitutional rights.
>
> (3) A declaratory judgment declaring that a ban imposed on literature distribution during the annual Dogwood Festival is unconstitutional on its face and as applied to plaintiffs' expression.
>
> (4) A preliminary and permanent injunction enjoining defendants from applying a ban on literature distribution so as to restrict constitutionally-protected speech of speakers, including plaintiffs, as well as unnamed third parties, on the public ways in Fayetteville, North Carolina, during the annual Dogwood Festival.
>
> (5) Award plaintiffs their costs and expenses of this action, including reasonable attorneys' fees.

In conjunction with their original complaint, on March 1, 2013, plaintiffs filed a motion for preliminary injunction in which they sought to enjoin defendants "from applying policy that facilitates a ban on literature distribution, on its face and as-applied, so as to prevent [plaintiffs] and third party individuals from engaging in literature distribution on public ways in downtown Fayetteville during the 2013 Fayetteville Dogwood Festival [commencing April 26, 2013], future Dogwood Festivals, and other festivals taking place in downtown Fayetteville." (Mot. for Prelim. Inj. 1).

On March 4, 2013, the court directed plaintiffs to notify defendants of the filing of the action, and ordered response to the motion for preliminary injunction within twenty-one days of service, and set hearing on the motion for April 19, 2013. On March 28, 2013, defendants filed a memorandum in opposition to the motion for preliminary injunction, attaching affidavits and

2

documentary exhibits about the Dogwood Festival. At hearing on April 19, 2013, the court heard argument on the motion by counsel and took the matter under advisement.

On April 23, 2013, the court entered an order denying the preliminary injunction motion, holding that plaintiffs had failed to establish a likelihood of success on the merits on the basis of findings of facts on the record then before the court. The next day, the court entered an initial order regarding planning and scheduling, directing the parties to file a discovery plan by May 29, 2013.

On April 30, 2013, plaintiffs filed a notice of appeal of the court's denial of their preliminary injunction motion. On May 2, 2013, plaintiffs moved to stay discovery and all proceedings in the district court pending appeal, and the court granted the motion to stay the next day.

In the court of appeals, the appeal proceeded to oral argument on December 11, 2013. That same day, the court of appeals dismissed the appeal, stating "[f]or the reasons expressed in open court, the appeal in this case is dismissed as moot. This order is in no way intended to address plaintiffs' remaining claims for relief in this action." (DE 34).

Plaintiffs then filed a second motion for preliminary injunction on January 2, 2014, including new factual assertions and exhibits based upon the 2013 and upcoming 2014 Dogwood Festivals. The second motion for preliminary injunction sought to enjoin defendants from "applying and/or enforcing policy that bans literature distribution, on its face and as-applied, so as to prevent Price, Legg and third party individuals from engaging in literature distribution on public ways in downtown Fayetteville during the 2014 Dogwood Festival . . . or any future Dogwood Festival." (Second Mot. for Prelim. Inj. 1).

On January 15, 2014, the court lifted the stay and held a Rule 16 status hearing at which the parties agreed to attend a court-hosted settlement conference during the first two weeks of February

3

2014. Meanwhile, defendants filed on January 30, 2014, an initial response in opposition to plaintiffs' motion, in which defendants asserted as previewed at hearing that the motion is moot because the city is not, and would not be, enforcing the restriction plaintiffs seek to enjoin.

Following court-hosted settlement conference held on February 11, 2014, the parties tendered a proposed consent order stating that the parties resolved between themselves plaintiffs' second motion for preliminary injunction. In particular, the consent order states that the parties agreed that defendants "will not enforce the current literature distribution rule promulgated by Dogwood Festival, Inc." (DE 47). The court retained jurisdiction to enforce the parties' agreement and to resolve the remaining claims set out in plaintiffs' complaint.

The court directed the parties to confer and develop a joint report and plan for remaining case deadlines and disposition. The court then entered a case management order that included a period of discovery running from May 31, 2014, to September 30, 2014, and set a dispositive motions deadline for October 31, 2014. In the meantime, on March 11, 2014, defendants filed motions for judgment on the pleadings and to dismiss. Plaintiffs also filed a first amended complaint by stipulation, on March 20, 2014, which was identical to the original complaint, except that it added the identity of an original "John Doe" defendant. The court denied defendants' motions on May 21, 2014, allowing all claims to proceed.

Plaintiffs filed a motion for leave to file a second amended complaint on June 23, 2014. Before that motion ripened, the parties filed a joint motion to approve consent judgment on behalf of all parties. The court entered a consent order and judgment in accordance thereof, which provided as follows:

> judgment is hereby entered in favor of plaintiffs on their claims for permanent injunctive and declaratory relief from restrictions on their distribution of religious

literature at private festivals that are free open to the public, and held on public ways with the City of Fayetteville, North Carolina. Defendants shall pay each plaintiff the amount of $1.00 as nominal damages. By stipulation of the parties, the plaintiffs shall be permitted to distribute religious literature at private festivals that are free, open to the public, and held on public ways within the City of Fayetteville, including the annual Dogwood Festival and the Independence Day Concert held in downtown Fayetteville, North Carolina.

(DE 68). Plaintiffs filed a motion for bill of costs on August 19, 2014, which motion was granted by the court on December 1, 2014. In the meantime, plaintiffs filed the instant motion for an award of attorney's fees and non-taxable expenses in the amount of $218,222.43.

In support of their motion for attorney's fees, plaintiffs submitted the following materials: (A) a declaration of counsel Nathan W. Kellum, (B) counsel's task-based time fee statement, reflecting his exercise of billing judgment and itemization of expenses, (C) a declaration of local counsel Deborah J. Dewart, (D) local counsel's task based time fee statement, reflecting her exercise of billing judgment and itemization of expenses, and (E) the declaration of Robert D. Potter, Jr., a North Carolina attorney, regarding the reasonableness of time expended and hourly rates in this case.

Defendants oppose the motion insofar as it seeks attorney's fees and non-taxable expenses for time spent pursuing interlocutory appeal. Plaintiffs replied in support of their motion, seeking a revised sum total of $227,392.43, to reflect time spent in preparing their reply, accompanied by supporting declarations.

**COURT'S DISCUSSION**

A.  Standard for Attorney's Fees

"The Civil Rights Attorney's Fees Awards Act of 1976 authorizes the award of 'a reasonable attorney's fee' to 'the prevailing party' in certain civil rights actions, including suits brought under Section 1983." Lefemine v. Wideman, 758 F.3d 551, 555 (4th Cir. 2014) (quoting 42 U.S.C. §

5

1988(b)). Section 1988 "contemplates reimbursement not only for attorney's fees but also litigation expenses such as secretarial costs, copying, telephone costs and necessary travel." Trimper v. City of Norfolk, Va., 58 F.3d 68, 75 (4th Cir. 1995).

"The proper calculation of an attorney's fee award involves a three-step process." McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014). "First, the court must 'determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate.'" Id. (quoting Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir.2009)). "To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth" below. Id. These factors are:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Id. at 88 n. 5. There is a "strong presumption" that the "lodestar number represents a reasonable attorney's fee," and "this presumption can only be overcome 'in those rare circumstances where the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." Id. at 88-89 (quoting Perdue v. Kenny, 130 S.Ct. 1662, 1673 (2010)).

Second, "the court must 'subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" Id. at 88 (quoting Robinson, 560 F.3d at 244). In this context, "there is no certain method of determining when claims are 'related' or 'unrelated.'" Hensley v. Eckerhart, 461 U.S. 424, 437 (1983). "The congressional intent to limit awards to prevailing parties requires that these

6

unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Id. at 434. "The reason for not subtracting hours spent on unsuccessful claims that are related to successful ones is that when successful and unsuccessful claims are related, '[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002) (quoting Hensley, 461 U.S. at 435).

Third, and finally, "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" McAfee, 738 F.3d at 88 (quoting Robinson, 560 F.3d at 244). At this step, the court must "consider the relationship between the extent of success and the amount of the fee award." McAfee, 738 F.3d at 92. The court should reduce the award at this step only if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439-40.

The court will address each step of the analysis in turn below.

B.  Application

    1.  Lodestar Figure

Plaintiffs assert that their counsel reasonably have expended 605.80 hours for work in this case, including time spent on the motion for attorney's fees. Plaintiffs seek an hourly rate of $350 for Kellum and $250 for Dewart. Considered together, this yields $223,855 in attorney's fees. Along with $3,537.43 in non-taxable expenses, plaintiffs seek a total sum of $227,392 with their motion. Defendants do not dispute that the hourly rate is reasonable. Nor do they dispute the reasonableness of the time expenditures for purposes of the lodestar figure, with exception of the limited points discussed below. At this first step of the attorney's fee calculation, the court finds the

7

hourly rate and time spent to be reasonable based upon application of the following factors.

(1) <u>Time and labor expended</u>. The time records of Kellum and Dewart provide a detailed, descriptive, record of time expended in this case, and the nature of the work performed. Kellum further has notated his time records to show instances where time claimed was reduced for purposes of the motion, where excessive, clerical, not germane, travel time, or duplication.

(2) <u>Novelty and difficulty of the questions raised</u>. This case presented both novel and difficult questions of fact and law, justifying considerable time spent researching, briefing, and arguing points of fact and law before this court.

(3) <u>Skill required to properly perform the legal services rendered</u>. The nature of First Amendment litigation and the claims raised in this case support a finding of particular legal skill required to properly perform the legal services rendered.

(4) <u>The attorney's opportunity costs in pressing the instant litigation</u>. The nature of the permanent and preliminary injunctive relief sought, and the complexity of the issues involved, imposed considerable costs on counsel, particularly Kellum, who was required to devote considerable time to the litigation in order to present a successful case.

(5) <u>The customary fee for like work</u>. The rates sought ($350 for Kellum and $250 for Dewart) are in line with, if not below, the rates of attorneys with comparable skill and experience in civil litigation who regularly practice in the Eastern District of North Carolina. (<u>See</u> Declaration of Robert Potter).

(6) <u>The attorneys' expectations at the outset of the litigation</u>. Counsel understood that they would not charge plaintiffs for the legal services they incurred, but rather that plaintiffs would

8

pursue attorney's fees and expenses, under 42 U.S.C. § 1988, as set forth in the complaint and in the instant motion.

(7) <u>The time limitations imposed by the client or circumstances</u>. Much of the timing of the work in this case was influenced by the timing of the annual Dogwood Festivals. The court has noted defendants' argument that the total amount of time spent preparing a complaint in this matter, approximately 80 hours, was not warranted. Upon review of Kellum's itemized time description, in light of the claims raised and the factual predicate for such claims, the court finds the amount of time expended in this respect to be reasonable. Although defendants also question the efficacy of filing of the complaint and first preliminary injunction motion only shortly before the 2013 Dogwood Festival, the court finds that such considerations do not render unreasonable the total time actually spent in preparation of such filings.

(8) <u>The amount in controversy and the results obtained</u>. Although plaintiffs sought only nominal damages, they also sought significant injunctive relief. The reasonable hours expended in this court and the reasonable hourly rate are justified by the results obtained in this court.

(9) <u>The experience, reputation, and ability of the attorney</u>. The hourly rates of Kellum and Dewart are commensurate with their experience, reputation, and ability, as demonstrated through their respective declarations detailing their experience and accomplishments.

(10) <u>The undesirability of the case within the legal community in which the suit arose</u>. In light of the difficult First Amendment legal issues presented by this case, in addition to challenges in development of the factual record, without guarantee of success or attorney fees, plaintiffs have demonstrated the undesirability of the case within the Fayetteville, North Carolina, legal community in which the suit arose.

9

(11) <u>The nature and length of the professional relationship between attorney and client</u>. Plaintiffs' attorneys have not attested to any prior professional relationship with their clients. Neither party proposes consideration of this factor as bearing on the lodestar figure in this case. Accordingly, the court finds this factor to be inconsequential.

(12) <u>Attorneys' fees awards in similar cases</u>. The court has considered the examples raised by plaintiffs in their memorandum in support of attorney's fees. The fees sought in this case are within the range of fees awarded in similar cases.

In sum, based upon the foregoing factors, the applicable lodestar figure in this case, resulting from multiplying the number of reasonable hours expended times a reasonable rate, plus reasonable litigation expenses, is $227,392.43.

2.      Unsuccessful Claims

As noted above, defendants urge the court to reduce the lodestar figure to account for the amount of time spent on the unsuccessful interlocutory appeal of the court's order denying the first motion for preliminary injunction. Plaintiffs argue that the interlocutory appeal was not unrelated to the successful claims in this lawsuit, and therefore is not appropriate for exclusion. Contrary to plaintiffs' argument, in light of the unique circumstances of this case, the court finds that the time spent on the interlocutory appeal properly is characterized as time spent on an unsuccessful claim unrelated to the successful ones in this case.

Recognizing plaintiffs had brought this action on "the eve of" the 2013 Dogwood Festival, the court, in scheduling hearing on plaintiffs' first motion for preliminary injunction, noted that "plaintiffs seek preliminary injunction to prevent [an] alleged violation during the 2013 Fayetteville Dogwood Festival, scheduled to commence April 26, 2013." (DE 12). The court set hearing on the

10

motion April 19, 2013. At the hearing, plaintiffs made clear that their motion for preliminary injunctive relief was directed at the 2013 Dogwood Festival. Indeed, neither the 2014 festival, nor any other future festival, was discussed, nor would they have been proper subject of preliminary injunctive relief expedited for consideration at that time. Despite the language on the face of the motion, seeking injunctive relief for "future Dogwood Festivals," (DE 10), plaintiffs' arguments, and the court's consideration thereof, were directed to the imminent April 26, 2013, start of the 2013 Dogwood Festival.

The court's expedited order denying plaintiffs' motion, entered only days before the 2013 festival, made clear it was directed at the 2013 festival. The court noted in its opening paragraph that "plaintiffs seek preliminary injunction to prevent a similar alleged violation during the 2013 Fayetteville Dogwood Festival, scheduled to commence April 26, 2013." (DE 25). Considering the limited record available at that time, containing facts only with respect to the 2012 festival and upcoming 2013 festival, the court determined that plaintiffs had not demonstrated a likelihood of success on the merits of their claims.

The court immediately thereafter directed the parties to develop a discovery plan for the case. Under a normal case schedule, the case could then have proceeded to discovery to take into account new developments at the 2013 festival, and any further injunctive relief could have been considered well in advance of the 2014 festival, then one year away.

Plaintiffs, however, noticed their appeal of the court's order denying their motion for preliminary injunction on April 30, 2013, after the 2013 festival had already completed. Plaintiffs also sought a stay of case proceedings in the district court, which, when granted, brought to a halt

11

all case activity towards an ultimate judgment in this case. At that point, time records of plaintiffs' counsel reflect that they commenced work exclusively on their appeal.

For purposes of the present analysis, the court considers time spent directly on the interlocutory appeal, <u>after</u> the stay order was filed in district court on May 3, 2013, to be unrelated to the claims remaining in the district court. Up to that point, counsel's time spent determining whether an appeal was warranted and filing of the motion in the district court, could have been related to the ongoing litigation in the district court had plaintiffs decided to continue in the district court.[1] The first time entry after the May 3, 2013, district court stay order was on May 8, 2013, and the last time entry for purposes of the interlocutory appeal only was on the date of the Fourth Circuit dismissal order on December 11, 2013. The total amount of fees and expenses claimed during this period is $71,012.83 (Kellum: 193 hours @ $350 per hour = $67,550; Dewart: 11.9 hours @ $250 per hour = $2,975; Total attorney's fees = $70,525; expenses = $487.83).

With respect to the nature and merits of the proceedings on appeal, the court defers to the assessment by the Fourth Circuit Court of Appeals. The Fourth Circuit dismissal order states that the appeal was dismissed as moot "[f]or the reasons expressed in open court." (DE 34). At oral argument, the panel expressed the following reasoning regarding the mootness of the appeal:

> "Why do you say that this is capable of repetition yet evading review?" (Argument recording ending 1:51)[2]

---

[1] The court disagrees in this respect with defendants' suggestion to include for deduction time spent on April 25, 2013, analyzing propriety of appeal (3.2 hours), and time spent between April 29, 2013 and May 2, 2013, preparing notice of appeal and motion for stay (3.3 hours). The court includes, however, for deduction, 2 hours of time spent by Dewart noted in a time entry spanning without differentiation May 1, 2013 to May 9, 2013, reported to be spent researching and drafting a memorandum of law for submission to Kellum.

[2] See http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments#audiocurrent, for the oral argument recording.

"I was wondering how it would have evaded review if you had promptly filed everything" (id. 3:12)

"You do agree the [district] judge only ruled as to 2013?" (id. 3:49)

"Show us where in Judge Flanagan's order that she referred to future festivals." (id. 3:59)

"Right, she did not refer, and unless you can show me someplace that I didn't see it, and so we really only have the 2013 Festival in front of us." (id. 4:10)

"You are not appealing from the motion, you're appealing from the court's judgment . . . and that's what we look at." (id. 4:26)

"You wanted to enjoin the City of Fayetteville for the 2013 Festival from enforcing this restriction, and the festival is already over." (id. 6:07)

"<u>The question right now is what we do with this appeal</u>, and hypothetically were we to dismiss this appeal as moot, that does not mean the whole case is dismissed . . . wouldn't you continue to have your claims for permanent injunction or damages?" (id. 7:04) (emphasis added)

"[Could] a preliminary injunction sweep so broadly as to cover all future events, as opposed to a permanent injunction?" (id. 8:09)

"How do we even consider what you're saying if the court didn't address it?" (id. 8:41)

"Did you ever ask the court to expand the scope of its judgment order?" (id. 9:07)

"You won't give us a straightforward answer as to whether the same policy is in place for the 2014 festival." (id. 11:48)

"I'm actually sympathetic to your position on the merits . . . . but the procedural posture is a very difficult one . . . . the mootness thing is a real hurdle." (id. 14:20)

"If you're asking us to shave a Supreme Court decision on a moot case, that's a tall order, and that's a lot of different hurdles." (id. 14:49)

"If the rules are already in place . . . then go and get a judgment order from the District Court that addresses a festival that has yet to occur other than one that is already over." (id. 15:45)

13

"Did you ever alert the court after it entered its judgment that it failed to address a substantial part of your motion?" (id. 16:28)

"I think you can get to the merits of this case, but it has to be set up right procedurally, and its in a very awkward posture right now. . . . You must recognize that, from an advisory opinion point of view, we'd be writing something at great length about a festival that's already occurred, not knowing what's going to occur in the future, with a judgment order that's limited in its focus." (id. 17:28)

"You've got to realize its in a problematic procedural posture right now." (id. 17:38)

"The complaint below actually requests several forms of relief . . . . [the appeal of the preliminary injunction] is a narrow question." (id. 21:05) (emphasis added)

"On the future point, is a request for injunction for all future festivals, is that a request, in essence, for permanent injunction instead of preliminary injunction?" (id. 22:00)

"The problem with the procedural posture of the case is that it hasn't been developed as an evidentiary matter." (id. 33:59)

"The whole thing is here on a very, very, limited narrow question, which is whether this appeal should be dismissed as moot." (id. 39:25) (emphasis added).

In sum, the Fourth Circuit characterized the district court's order denying the preliminary injunction motion as one addressing only the 2013 festival, and making no pronouncement regarding the merits of the claim for permanent injunctive relief or nominal damages. The Fourth Circuit, in turn, characterized the interlocutory appeal as presenting a narrow issue for review of the court's order on preliminary injunction for the 2013 festival. This issue was deemed moot, and the appellants accordingly were unsuccessful in obtaining the relief sought on appeal. Further, after the dismissal of the interlocutory appeal, plaintiffs' separate claims for damages and permanent injunctive relief remained for decision, and, on a more established record, proved to be successful. The success of those claims did not depend upon, nor relate to, the narrow issue presented for review to the Fourth Circuit upon interlocutory appeal.

14

In sum, the interlocutory appeal was both unsuccessful and unrelated to the successful claims in the case. This is not a case where counsel's time on the interlocutory appeal was "devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis." Johnson, 278 F.3d at 337 (quoting Hensley, 461 U.S. at 435). Indeed, the litigation as a whole had been brought to a halt in the district court, and the time records during the interlocutory appeal reflect no litigation efforts apart from the interlocutory appeal. The interlocutory appeal proceedings properly may be treated as if they had been raised as a "separate lawsuit[,]" and no fee may be awarded for time spent in such proceedings. Hensley, 461 U.S. at 434. Therefore, the court must deduct from the lodestar figure ($227,392.43) the fees and expenses for time spent on the interlocutory appeal ($71,012.83), yielding an adjusted fees and expenses amount of $156,379.60.

Plaintiffs contend that a reduction in this instance is precluded by Perry v. Bartlett, 231 F.3d 155, 163 (4th Cir. 2000). Perry, however, is distinguishable from the circumstances of this case. In Perry a nonprofit advocacy organization filed suit in federal court challenging two provisions of the North Carolina election and campaign finance law, N.C. Gen. Stat. §§ 163-278.12A ("Section 12A") and 163-278.6(14) ("Section 14"). The plaintiffs sought a preliminary injunction against enforcement of the laws, and the district court denied the preliminary injunction. The plaintiffs then sought an interlocutory appeal of the preliminary injunction order. While the appeal was pending, litigation on the claims continued in district court, and the Fourth Circuit, in another case, North Carolina Right to Life, Inc. v. Bartlett, 168 F.3d 705 (4th Cir. 1999) ("NCRL"), found that Section 14 was unconstitutionally vague and overbroad. The plaintiffs voluntarily withdrew their appeal as

15

moot, (see DE 72-3), and, based on NCRL, the district court awarded a permanent injunction to the plaintiffs.

Unlike in the present case, the interlocutory appeal in Perry was directly related to the claims upon which the plaintiffs ultimately prevailed in Perry. But for the interceding NCRL decision, the interlocutory appeal would not have been moot, because the challenged election and campaign finance law would have still been in force and thus a basis for dispute. Indeed, the plaintiffs in Perry only voluntarily dismissed their appeal because the Fourth Circuit had ruled in their favor in another case on that same issue. In the present case, by contrast, the interlocutory appeal was moot from its outset, because the 2013 Dogwood Festival had already passed when the appeal was commenced. The issues raised in the interlocutory appeal – this court's denial of a preliminary injunction motion related to an event that had passed – were separate from the question of the ultimate merits of the case. Further, the Fourth Circuit dismissed the appeal over plaintiffs' vigorous argument to the contrary, unlike in Perry where the appellants dismissed the appeal voluntarily due to the intervening case on the merits. Finally, litigation did not continue in district court while the appeal was pending.

In sum, Perry does not dictate an award of attorneys fees for the unsuccessful interlocutory appeal in this case. The lodestar figure shall be reduced by the fees and expenses for time spent on the interlocutory appeal, yielding $156,379.60 as the remaining amount for consideration for award of attorney's fees.

3. Percentage of Remaining Amount

Finally, the court considers whether "the court should award 'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" McAfee, 738 F.3d at 88 (quoting Robinson, 560 F.3d at 244). The court should reduce the award at this step only if

16

"the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Hensley, 461 U.S. at 439-40. Given that plaintiffs prevailed in obtaining a permanent injunction, declaratory relief, and nominal damages, no further reduction is warranted.

Therefore, based on the lodestar figure, reduced by fees associated with the unsuccessful interlocutory appeal, plaintiffs are entitled to attorney's fees and expenses in the amount of $156,379.60.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for attorney's fees (DE 70) is GRANTED IN PART and DENIED IN PART. Pursuant to 42 U.S.C. § 1988, the court awards attorney's fees and expenses to plaintiffs in the amount of $156,379.60.

SO ORDERED this the 17th day of March, 2015.

_____
LOUISE W. FLANAGAN
United States District Judge